UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HEIDI ERICKSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case: 1:25-cv-07167 |
| | ) | |
| v. | ) | |
| | ) | |
| UNLIMITED CARRIER, INC., | ) | |
| | ) | |
| Defendant. | ) | Jury Trial Demanded |
| | ) | |

# COMPLAINT

Plaintiff, Heidi Erickson ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Unlimited Carrier, Inc. ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, ("ADA") seeking redress for Defendant's discrimination on the basis of Plaintiff's disability, Defendant's failure to accommodate Plaintiff's disability, Defendant's disability-based harassment, and Defendant's retaliation against Plaintiff for engaging in protected activity under the ADA.

2. This lawsuit arises under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA") seeking redress for Defendant's interference with Plaintiff's FMLA rights and Defendant's retaliation for Plaintiff requesting/utilizing their FMLA rights.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331. This action

is authorized and instituted pursuant to 42 U.S.C. § 12101 *et seq.* and 29 U.S.C. § 2601 *et seq*.

4. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

5. All conditions precedent to jurisdiction under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*, and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq* have occurred or been complied with.

6. A charge of employment discrimination on basis of disability and retaliatory discharge was filed by the Plaintiff with the Equal Employment Opportunity Commission ("EEOC") (Attached hereto as Exhibit "A").

7. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B"), and Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## PARTIES

8. At all times material to the allegations of this Complaint, Plaintiff, Heidi Erickson resides in Will County in the State of Illinois.

9. At all times material to the allegations in this Complaint, Defendant, Unlimited Carrier, Inc. is a corporation doing business in and for Will County whose address is 465 W CROSSROADS PKWY BOLINGBROOK, IL, 60440.

10. Plaintiff was employed by Defendant as an "employee" within the meaning of ADA, 42 U.S.C. § 12111(4) and was an "eligible employee" as defined by the FMLA, 29 U.S.C. §2611(2)(A).

11. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA and 29 U.S.C.§ 2611(4), and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5)(A).

## BACKGROUND FACTS

12. Plaintiff was hired by Defendant as human resources administrative assistant in or around February 2022.

13. Plaintiff's essential job duties included, but were not limited to:

- maintaining employee records,

- managing HR documents, assisting with recruitment,

- and ensuring compliance with company policies and procedures

14. Plaintiff was qualified for their position and was known to develop, meet and exceed performance standards for Plaintiff's job title.

15. Plaintiff received satisfactory feedback from Defendants about their work performance.

16. In or about October 2024, Plaintiff was succumbed to a severe and/or life-threatening condition.

17. Plaintiff's suffers from posterior chain surgical complications.

18. Plaintiff is "qualified individual" as defined under the ADA.

19. In or about October 2024, Plaintiff contacted and informed Defendant of the serious and life-threatening condition and/or disability.

20. Plaintiff has a disability resulting from a failed back surgery in 2020 and ongoing back issues.

21. In or around October 2024, Plaintiff began FMLA leave for physical therapy related to this injury and, later, for surgery, which was performed on October 24, 2024.

22. Plaintiff underwent the second back surgery, specifically a spinal fusion and L4 to S1 fusion.

23. Following surgery, Plaintiff was out on FMLA leave to recover.

24. Prior to going out on FMLA, Plaintiff was told that FMLA was being managed by a third-party administrator and that they handled all FMLA matters for Plaintiff's employer.

25. Plaintiff expressed her concerns that Illinois law required her employer to maintain a file to track her FMLA usage in-house.

26. Upon Plaintiff's return to work on December 6, 2024, before her FMLA was exhausted, Plaintiff requested reasonable accommodations for her disability under the ADA.

27. Plaintiff's request, filled out by her healthcare provider, included the following:

- -No sitting, standing, or walking for longer than 20-30 minutes at a time;
- -No lifting over 5-10 lbs;
- -The ability to schedule doctor appointments and physical therapy sessions;
- -The ability to use a walker/rollator;
- -Access to ADA-compliant bathrooms;
- -The ability to work half-days or have a shortened work schedule to accommodate Plaintiff's medical needs and recovery.

28. Plaintiff's doctor also noted that there was a risk of falling and injuring her surgical site.

4

29. Plaintiff's employer initially agreed to these accommodations, but Plaintiff encountered several issues upon returning to work.

30. More specifically, on or about December 2, 2024, the office had flooded.

31. Despite several employees being permitted to work from home due to the building flooding, Plaintiff was not allowed to do so.

32. This left Plaintiff in the office, where she had to navigate dangerous conditions to try to use the bathroom, as the only accessible bathroom was blocked by large humidifiers, water lines, and electric cords.

33. Plaintiff was unable to safely access the bathroom due to her walker and was therefore forced to restrict her water intake for several days, waiting until Plaintiff could get home to use a restroom.

34. Furthermore, Plaintiff did not receive any support from her manager, HR Manager Michael D'Angelo, or his supervisor, General Counsel Justin Choate.

35. Plaintiff was working downstairs all alone, and despite her requests for assistance with tasks which were difficult for Plaintiff due to her disability, Plaintiff's manager was largely unresponsive or seemingly too busy.

36. For example, notwithstanding Plaintiff's temporary use of a walker and lifting restrictions, Plaintiff was expected to break down large water cases and stock refrigerators around the office.

37. Their behavior toward Plaintiff was dismissive; they wouldn't greet Plaintiff, look at Plaintiff, or offer assistance.

38. In or around mid-December 2024, Plaintiff was informed that she would need to

5

return her work computer to IT.

39. Plaintiff asked Michael why they were requesting this as Plaintiff would need her laptop to work from home at times, and he said he did not know anything about it.

40. This led Plaintiff to reasonably believe that her termination was imminent.

41. On or about December 24, 2024, the employee responsible for performing accounting duties quit.

42. Because Plaintiff had previously been trained on these duties, myself and one other accounts receivable employee took over these responsibilities.

43. All of these duties were consistent with Plaintiff's limitations, whereas some of her normal duties were not.

44. Still, Plaintiff was not offered the accommodation of simply performing these duties in light of her requested accommodations.

45. On or about January 7, 2025, Plaintiff raised a concern with Michael, as well as the COO, Brian Smith, about the icy parking lot, which was a fall hazard for Plaintiff, given her use of a walker.

46. Plaintiff saw Brian walk out to the parking lot to look and converse with Justin Choate.

47. Justin then entered the building, refused to greet Plaintiff, and there was no further acknowledgment or action taken on this issue.

48. On or about January 14, 2025, Plaintiff informed Michael that she would need to attend a post-op visit with her doctor on the morning of January 20, 2025, and that she had attempted to schedule it outside of working hours like her other appointments, but that was the

only time slot available.

49. Plaintiff told him she would come in and perform her morning duties prior to that appointment.

50. He responded by telling Plaintiff she did not need to come in that morning, as long as she informed the team what needed to be done.

51. Plaintiff clarified that she would prefer to come in and perform the duties myself because she had bills and insurance she needed to pay.

52. On or about January 17, 2025, Plaintiff was informed by Justin and Michael that her position was being eliminated, despite the fact that her job duties were merely being redistributed to other employees.

53. This was a clear act of retaliation for asserting Plaintiff's rights under FMLA and the ADA, as well as requesting reasonable accommodations.

54. Ultimately, on or about January 17, 2025, Defendant unlawfully terminated Plaintiff on the basis of Plaintiff's disability and engaging in protected activity as described above and/or in retaliation for taking FMLA leave.

55. The purported justification for termination was unlawful discrimination based on disability or because Defendant perceived Plaintiff as disabled.

56. Defendant interfered with Plaintiff's FMLA rights and retaliated against Plaintiff after Plaintiff requested to file for FMLA medical leave.

## COUNT I
### Violations of the Americans with Disabilities Act
### (Disability-Based Discrimination)

57. Plaintiff repeats and re-alleges paragraphs 1-56 as if fully stated herein.

7

58. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

59. Plaintiff met or exceeded performance expectations.

60. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

61. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

62. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

63. Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disability.

64. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

65. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## COUNT II
### Violation of Americans with Disabilities Act
### (Failure to Accommodate)

66. Plaintiff repeats and re-alleges paragraphs 1-56 as if fully stated herein.

67. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

68. Plaintiff is a qualified individual with a disability.

69. Defendant was aware of the disability and the need for accommodations.

70. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

71. Plaintiff's reasonable accommodations that was requested was not an undue burden on the Defendant.

72. Defendant did not accommodate Plaintiff's disability.

73. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., due to Plaintiff's disability.

74. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

75. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT III
**Violation of Americans with Disabilities Act**
**(Disability-Based Harassment)**

76. Plaintiff repeats and re-alleges paragraphs 1-56 as if fully stated herein.

77. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and harassed the Plaintiff on the basis of Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

78. Defendant knew or should have known of the harassment.

79. The disability-based harassment was severe or pervasive.

80. The disability-based harassment was offensive subjectively and objectively.

81. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*, due to Plaintiff's disability.

82. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

83. As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT IV
### Violation of Americans with Disabilities Act
### (Retaliation)

84. Plaintiff repeats and re-alleges paragraphs 1-56 as if fully stated herein.

85. Plaintiff is a member of a protected class under 42 U.S.C. § 12101, *et seq.*

86. During Plaintiff's employment with Defendant, Plaintiff requested and utilized approved accommodations.

87. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

88. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of disability based harassment or discrimination.

89. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory or harassing conduct complained of by Plaintiff.

90. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff requesting and utilizing approved accommodations, thereby violating Americans with Disabilities

Act of 1990, 42 U.S.C. § 12101, *et seq.*

91. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

92. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

93. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT V
### Violation of the Family and Medical Leave Act
### (FMLA Interference - Unlawful Denial of FMLA Rights)

94. Plaintiff repeats and re-alleges paragraphs 1-56 as if fully stated herein.

95. In February 2023, Plaintiff was eligible for FMLA leave.

96. At all times material, Plaintiff gave proper notice to her employer by informing them of the serious medical condition, which required Plaintiff to undergo spinal fusion surgery.

97. Defendant controlled Plaintiff's work schedule and conditions of employment.

98. Plaintiff provided enough information for their employer to know that Plaintiff's potential leave may be covered by the FMLA.

99. Despite their knowledge of Plaintiff's medical condition and life threatening situation, their employer failed to notify Plaintiff of their eligibility status and rights under the FMLA and failed to notify Plaintiff whether their leave was or could be designated as FMLA leave.

100. When Plaintiff's employer failed to notify Plaintiff of their eligibility status and rights under the FMLA and failed to notify Plaintiff whether the requested leave was or could be designated as FMLA leave, the Defendant interfered with Plaintiff's rights under the FMLA.

11

101. Despite Plaintiff's FMLA eligibility, Defendant unlawfully denied Plaintiff's utilization of their FMLA rights.

102. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

103. As a direct and proximate result of the interference described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

### COUNT VI
### Violation of the Family Medical Leave Act
### (FMLA Retaliation)

104. Plaintiff repeats and re-alleges paragraphs 1-56 as if fully stated herein.

105. Defendant terminated Plaintiff after Plaintiff provide notice of a request for medical leave, which constitutes a request for taking FMLA leave.

106. Defendant terminated Plaintiff because she requested and took FMLA leave as described above.

107. Specifically, Plaintiff requested FMLA leave when they explained that they had a condition that was severe or life threatening.

108. Defendant has intentionally engaged in unlawful employment practice in violation of the FMLA, by retaliating against Plaintiff for having requested to take leave for medical reasons.

109. Plaintiff's request for medical leave pursuant to the FMLA was a direct and proximate cause of Plaintiff's termination.

110. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of

enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in Plaintiff's favor and against Defendant as follows:

a. Back pay with interest;

b. Payment of interest on all back pay recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Reasonable attorneys' fees and costs;

g. Award pre-judgment interest if applicable; and

h. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 30th day of June 2025.

/s/ *Chad W. Eisenback*
**CHAD W. EISENBACK, ESQ.**
IL Bar No.: 6340657
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307 - 7632
Fax (630) 575 - 8188
ceisenback@sulaimanlaw.com
*Attorney for Plaintiff*